UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
----------------------------- X Docket#
UNITED STATES OF AMERICA,     : 15-cr-348(ERK)(VMS)
                              :
       - versus -             : U.S. Courthouse
                              : Brooklyn, NY
RENDON-GARCIA,                :
              Defendant       : April 20, 2017
-----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE

A  P  P  E  A  R  A  N  C  E  S:


**For the Government:**      **Bridget M. Rohde, Esq.**
                             United States Attorney

                             **Margaret Elizabeth Lee, Esq.**
                             **Taryn Merkl, Esq.**
                             Assistant U.S. Attorneys
                             271 Cadman Plaza East
                             Brooklyn, NY 11201


**For the Defendant:**       **Gary S. Villanueva, Esq.**
                             11 Park Place
                             Suite 1601
                             New York, NY 10007



**Transcription Service:**   **Transcriptions Plus II, Inc.**
                             61 Beatrice Avenue
                             West Islip, NY 11795
                             rl.transcriptions2@gmail.com

                   **BY:**  Theresa Roof




Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

                              Proceedings

 1              THE CLERK:  Criminal Cause for hearing, docket:

 2  15-cr-348 United States of America v. Rendon-Reyes.

 3              Spanish Interpreter, can you state your name

 4  for the record.

 5              MS. TRIANA:  Patricia Triana.

 6              THE CLERK:  Thank you.

 7              MS. TRIANA:  T-R-I-A-N-A.

 8              THE CLERK:  Thank you.

 9              Counsel, can you state your name for the

10  record.

11              MS. MERKL:  Taryn Merkl and Maggie Lee, for the

12  United States.  Good afternoon, your Honor.

13              THE COURT:  Good afternoon.

14              MR. VILLANUEVA:  Gary Villanueva for Mr.

15  Rendon-Garcia.  Good afternoon, your Honor.

16              THE COURT:  Good afternoon.

17              All right.  So except for the part where the

18  defendant takes an oath everyone can stay seated during

19  the plea.

20              Okay.  All right.

21              All right.  So Good afternoon.  My name's Vera

22  Scanlon, I'm a magistrate judge here.

23              We're here for the change of plea hearing so

24  let me first make sure I have the same papers that

25  everyone has.  I have a copy of the superseding

3

Proceedings

1    indictment, I have a copy of the plea agreement, which

2    has been marked as Government Exhibit 8.  I have a copy

3    of the consent to proceed before me, which we'll go over

4    in a minute in some more detail.  And I also have from

5    the government a description of the applicable statutes

6    and essential elements.

7              So does everybody have those papers?

8              MS. MERKL:  Yes, your Honor.

9              MR. VILLANUEVA:  Yes, I do, your Honor.

10             THE COURT:  All right.  For the government, are

11   there any victims of the offense and if so, has the

12   government fulfilled its obligation to notify them of

13   today's hearing and of their right to attend and be

14   heard?

15             MS. TRIANA:  Um, your Honor, may the

16   interpreter have respect for the request that your Honor

17   speak a little slower?

18             THE COURT:  All right.  I'm going to try again.

19             All right.  For the government, are there any

20   victims of the offense and if so, has the government

21   fulfilled its obligation to notify them of today's

22   hearing and of their right to attend and be heard?

23             MS. LEE:  Yes, your Honor.  The government has

24   made such notifications and the victims are planning to

25   participate in the sentencing proceedings as to some of

4

Proceedings

1  the defendants in this case, but are not planning to

2  participate in the plea proceedings.

3            THE COURT:  All right.  Mr. Rendon-Garcia, I'm

4  going to ask my deputy to administer an oath to you.

5            THE CLERK:  I'm sorry your Honor, I don't think

6  that was translated.

7            THE COURT:  Oh, sorry.  I wasn't looking up.

8  Let's try it again.

9            MS. LEE:  Your Honor, just to reiterate, the

10  government has made notification to the victims in this

11  case, and we have been advised by their representatives

12  that they do not plan to participate in the plea

13  proceedings in this case, although some of them plan to

14  participate in the sentencing proceedings as to certain

15  defendants.

16            THE COURT:  All right.  Thank you.

17            All right.  At this point, I'm going to ask my

18  deputy, Ms. Quinlan, to administer an oath to the

19  defendant.

20  J O S E   R E N D O N - G A R C I A, called as a witness,

21  having been first duly sworn testifies as follows:

22            THE COURT:  All right.  Mr. Rendon-Garcia, as

23  you may know, this case has been assigned to a district

24  judge, Judge Korman.  Judge Korman is the judge who will

25  make the ultimate decision as to whether to accept your

5

Proceedings

1   guilty plea and if he does to sentence you.  You have the

2   absolute right to have the district judge listen to your

3   plea without any prejudice to you.  Do you understand?

4                THE DEFENDANT:  Yes.

5                THE COURT:  So what's been proposed is that you

6   proceed here before me with regard to your plea.  We're

7   making a recording of today's proceedings.  A transcript

8   of that recording will be prepared by a court reporter

9   and it will be provided to the district judge.  The

10  district judge, Judge Korman will review the transcript

11  of today's proceeding in connection with deciding whether

12  to accept your plea and if he does, with your sentence.

13               Do you wish to give up your right to have the

14  district judge listen to your plea and instead proceed

15  here before me today?

16               THE DEFENDANT:  Yes.

17               THE COURT:  All right.  In connection with your

18  exercise of that waiver, I have this form which I'm

19  holding up, "Consent to have a Plea taken Before United

20  States Magistrate Judge, Vera M. Scanlon."

21               This form is in English.  Was it translated for

22  you from English to Spanish?

23               THE DEFENDANT:  Yes.

24               THE COURT:  All right.  Do you understand the

25  form?

6

Proceedings

1          THE DEFENDANT:  Yes.

2          THE COURT:  Are you in agreement with the form?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And did you have a sufficient

5    opportunity to review the form with your attorney?

6          THE DEFENDANT:  Yes.

7          THE COURT:  I'm going to ask about a few

8    signatures.  If you can see if from over there, I'm

9    pointing to the first signature on the page, is that your

10   signature?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Mr. Villanueva, is that your

13   signature below?

14         MR. VILLANUEVA:  Yes, it is, your Honor.

15         THE COURT:  And for the government, Ms. Merkl,

16   is that your signature here?

17         MS. MERKL: It is, your Honor.

18         THE COURT:  Thank you.  All right. I'm sorry.

19   I've been referring to Mr. --  the defendant as Rendon-

20   Garcia that one form says Rendon-Reyes.  What's the

21   correct name?

22         MS. LEE:  Your Honor, it is Rendon-Garcia.  I'm

23   not sure which form says "Rendon-Reyes."

24         THE COURT:  It's the -- this one.  Hold on.

25         Krista, can you just mark this?  His name is

7

                          Proceedings
1    correct, it's supposed to be Rendon-Garcia.  And then ask
2    them -- everyone can initial the change.
3              THE COURT:  All right, while she's preparing
4    that form,  Mr. Rendon-Garcia, do you give your consent
5    voluntarily of your own free will to proceed here before
6    me today?
7              THE COURT:  All right. What's your answer to
8    that question?
9              THE DEFENDANT:  Yes.
10             THE COURT:  All right.  Just for the record,
11   let me ask, Mr. Villanueva, and did you and your client
12   initial the change in his name at the top of the form at
13   the caption?
14             MR. VILLANUEVA:  We did, your Honor.
15             THE COURT:  All right.  And his name now,
16   correct, it should be Rendon-Garcia?  Is that right?
17             MR. VILLANUEVA:  That's correct, your Honor.
18             THE COURT:  And for the government, Ms. Merkl,
19   did you just initial that change on the consent form?
20             MS. MERKL:  I did.
21             THE COURT:  Thank you.
22             All right.  Mr. Rendon-Garcia, do you give your
23   consent to proceed before here before today voluntarily
24   and of your own free will?
25             THE DEFENDANT:  Yes.

8

Proceedings

1          THE COURT:  Has anyone made any threats or

2   promises to you to get you to proceed here before me?

3          THE DEFENDANT:  No.

4          THE COURT:  All right.  So as we go along

5   today, Mr. Rendon-Garcia, I'm going to have to ask you a

6   number of questions in order to assure myself that your

7   plea is, in fact, a valid plea.  If you don't understand

8   any of my questions or what I say, please either ask your

9   attorney or let me know and I will try to clarify what I

10  said.

11          So do you understand that you have the right to

12  be represented by an attorney at trial and at every other

13  stage of the criminal proceedings, including this one?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that if you can't

16  afford a lawyer, the court may appoint one for you?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Mr. Villanueva, are you retained

19  counsel or appointed counsel?

20          MR. VILLANUEVA:  Appointed, your Honor.

21          THE COURT:  All right.  Mr. Rendon-Garcia, if

22  at any point you'd like to speak with Mr. Villanueva,

23  please let me know and I'll let you do so.  Do you

24  understand?

25          THE DEFENDANT:  Can you say what you just said?

9

                              Proceedings

1           THE COURT:  Okay.  So my understanding is that

2   the man sitting next to you is your lawyer.  Is that

3   correct?

4           THE DEFENDANT:  Yes.

5           THE COURT:  If at any time today you would like

6   to speak with him, just let me know and I'll let you do

7   that.  Do you understand?

8           THE DEFENDANT:  Yes.

9           THE COURT:  I'm just going to remind you that

10  you just took an oath to tell the truth.  So what that

11  means is if you answer any of my questions falsely, your

12  answers may later be used against you in a separate

13  prosecution for the crime of perjury or of making a false

14  statement.  Do you understand?

15          THE DEFENDANT:  Yes.

16          THE COURT:  All right.  We're going to start

17  with some background questions.

18          What's your full name?

19          THE DEFENDANT:  Jose Rendon-Garcia.

20          THE COURT:  How old are you?

21          THE DEFENDANT:  Thirty-four.

22          THE COURT:  What's the highest level of

23  education that you've completed?

24          THE DEFENDANT:  Second year of high school.

25          THE COURT:  And how old were you when you

10

Proceedings

1   finished the second year of high school?

2          THE DEFENDANT:  Between 12 and 13.

3          THE COURT:  And where did you go to school?

4          THE DEFENDANT:  San Miguel El Encino in

5   Tlaxcala, Mexico,

6          THE COURT:  And what was the name of the

7   school?

8          THE DEFENDANT:  Hyman Torres Bove (sic)

9          THE COURT:  Okay.  And since then, since you

10  are about 12 or 13, have you had any formal education?

11         THE DEFENDANT:  No.

12         THE COURT:  All right.  I'm going to ask you a

13  different set questions.

14         Are you presently or have you recently been

15  under the care of a doctor?

16         THE DEFENDANT:  No.

17         THE COURT:  Are you presently or have you

18  recently been under the care of any mental health

19  professional, such as a doctor, I'm sorry, such as a

20  psychiatrist, psychologist or social worker?

21         THE DEFENDANT:  No.

22         THE COURT:  Have you ever been hospitalized or

23  treated for a mental illness?

24         THE DEFENDANT:  No.

25         THE COURT:  Have you ever been hospitalized or

11

Proceedings

1    treated for an addiction to drugs or alcohol?

2              THE DEFENDANT:  Here?

3              THE COURT:  Anywhere.  Any time in your life.

4              THE DEFENDANT:  No.

5              THE COURT:  In the past 24 hours have you

6    consumed any narcotics?

7              THE DEFENDANT:  No.

8              THE COURT:  In the past 24 hours have you

9    consumed any alcohol?

10             THE DEFENDANT:  No.

11             THE COURT:  In the past 24 hours have you taken

12   any medications?

13             THE DEFENDANT:  No.

14             THE COURT:  Is your mind clear as you sit here

15   today?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you understand these

18   proceedings?

19             THE DEFENDANT:  Yes.

20             THE COURT:  All right.

21             Mr. Villanueva, have you discussed this matter

22   with your client?

23             MR. VILLANUEVA:  Yes, I have.

24             THE COURT:  Do you speak Spanish?

25             MR. VILLANUEVA:  Just a little, your Honor.

12

Proceedings

1          THE COURT:  All right.  So --

2          MR. VILLANUEVA:  But I did so through an

3  interpreter.

4          THE COURT:  So let me just ask that.  In all of

5  your communications with your client did you have the

6  assistance of a Spanish language interpreter?

7          MR. VILLANUEVA:  Yes, I have.

8          THE COURT:  And did you have any difficulty

9  with your communications with your client?

10          MR. VILLANUEVA:  None, whatsoever.

11          THE COURT:  In your opinion, is Mr. Rendon-

12  Garcia capable of understanding the nature of these

13  proceedings?

14          MR. VILLANUEVA:  Yes, he is.

15          THE COURT:  In your opinion, does Mr. Rendon-

16  Garcia understand the rights he'll be waiving if goes

17  ahead with his guilty plea?

18          MR. VILLANUEVA:  Yes, he does.

19          THE COURT:  Do you have any doubt as to Mr.

20  Rendon-Reyes -- Mr. Rendon-Garcia's competence to plead

21  at this time?

22          MR. VILLANUEVA:  None, whatsoever

23          THE COURT:  Have you advised him of the

24  possible sentencing consequences?

25          MR. VILLANUEVA:  I have.

13

Proceedings

1          THE COURT:  Have you discussed with him the

2    operation of the sentencing guidelines?

3          MR. VILLANUEVA:  I have.

4          THE COURT:  Have you discussed with him the

5    mandatory minimum applicable in his case?

6          MR. VILLANUEVA:  I have.

7          THE COURT:  Okay.  Do you believe he

8    understands everything that you discussed in that regard?

9          MR. VILLANUEVA:  Yes, I do.

10         THE COURT:  All right. Mr. Rendon-Garcia, have

11   you had a sufficient opportunity to discuss your case

12   with your attorney?

13         THE DEFENDANT:  Yes.

14         THE COURT:  And have you done so with the

15   assistance of a Spanish language interpreter?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Are you fully satisfied with the

18   representation and legal advice given to you in this case

19   by your attorney?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Have you received a copy of this

22   document, it's called the "superseding indictment."

23   It's the government's charges against you and your

24   co-defendants?

25         THE DEFENDANT: Yes.

14

Proceedings

1          THE COURT:  Did you -- well, let me ask, I'm

2   sorry.  Was the superseding indictment translated for you

3   from English to Spanish?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And did you review the superseding

6   indictment with your attorney?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Did you specifically review Counts

9   1, the less -- as well as Count 11 of the superseding

10   indictment?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Did you also review Racketeering

13   Act 5(a) and Racketeering Act 10(a)?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Did you also review Count 21?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And did you discuss all of those

18   counts in the racketeering acts with your lawyer?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And do you understand those counts

21   and those racketeering acts?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And counsel, do you want me to read

24   either the superseding indictment or the relevant charges

25   to your client?

15

Proceedings

1          MR. VILLANUEVA:  That's not necessary, your

2     Honor.

3          THE COURT:  All right.

4          Mr. Rendon-Garcia, I'm now going to explain to

5     you review some of your rights in this criminal

6     proceeding.

7               The first and most important thing you should

8     understand is that you don't have to plead guilty even if

9     you are guilty.  Under the American legal system, the

10    government or the prosecution has the burden of proving

11    the guilt of a defendant beyond a reasonable doubt.  If

12    the government cannot or does not meet its burden of

13    proof, the jury at the trial, has the duty to find the

14    defendant not guilty, even if the defendant is guilty.

15    Do you understand?

16          THE DEFENDANT:  Yes.

17          THE COURT:  So for you, that means you have a

18    choice.  It's up to you to decide what to do in your

19    case.  It's not your lawyer's choice or anyone else's

20    choice.  You can withdraw your previously entered plea of

21    not guilty, and instead plead guilty, as I'm told you

22    wish to do, or you can choose to go to trial simply

23    persisting in your plea of not guilty.  If you do that --

24    so if you do that, you'll make the government meet its

25    burden of proving your guilt beyond a reasonable doubt.

16

Proceedings

1  So you should know that it has sometimes happened in

2  American courtrooms, including in this courthouse, that a

3  jury has returned a verdict of not guilty, although

4  everyone else in the courtroom believed the defendant was

5  guilty.  What the jury was saying in that instance, was

6  not that the defendant wasn't guilty, but rather that the

7  government or the prosecution had failed to meet its

8  burden of proving the defendant's guilt beyond a

9  reasonable doubt.  Do you understand?

10          THE DEFENDANT:  Yes.

11          THE COURT:  So what that means for you is, you

12  have a choice, you can say to the government, prove the

13  case against me.  If you'd like to do that, when I ask

14  you how you plead, you simply say not guilty.  If you

15  persist in your plea of not guilty, under the

16  Constitution and Laws of the United States of America,

17  you are entitled to a speedy and public trial by a jury,

18  with the assistance of your attorney, on the charges

19  contained in the indictment, which has been filed with

20  the court.

21          That's the document I'm holding up, is the

22  indictment, the one we just talked about earlier, with

23  the charges against you and your co-defendants.  Do you

24  understand?

25          THE DEFENDANT:   Yes.

17

Proceedings

1          THE COURT:  At a trial in your case, you would

2     be presumed innocent, you would not have to prove your

3     innocence; it would be the government's burden to

4     overcome the presumption of innocence and prove you

5     guilty by competent evidence and beyond a reasonable

6     doubt.  And as I said earlier, if the government failed

7     and didn't meet its burden, the jurors would have the

8     obligation to find you not guilty.  Do you understand?

9          THE DEFENDANT:  Yes.

10          THE COURT:  If you decide to go ahead with your

11     guilty plea, you're giving up the right to have the

12     government satisfy its burden of proving you guilty

13     beyond a reasonable doubt.  And instead, you're admitting

14     your guilt.  Do you understand?

15          THE DEFENDANT:  Yes.

16          THE COURT:  At a trial in your case, witnesses

17     for the government would have to come to court; they

18     would have to testify in your presence.  Your lawyer

19     would be able or would have the right to cross-examine

20     those witnesses for the government, your lawyer could

21     object to evidence offered by the government and your

22     lawyer could offer witnesses and other evidence on your

23     behalf.  Your lawyer -- your lawyer would also have the

24     right to subpoena or to compel witnesses to come to court

25     and testify.  Do you understand all those rights?

18

Proceedings

1           THE DEFENDANT:  Yes.

2           THE COURT:  By pleading guilty, and if you --

3    and if I recommend that the district judge accept your

4    plea and that's what Judge Korman does, you are giving up

5    these rights.  You are giving up your right to have a

6    trial, you are giving up your right to confront the

7    witnesses who would testify against you.  You are giving

8    up your right to offer evidence on your own behalf, you

9    are giving up your right to compel witnesses to come to

10   court and testify, and you're giving up your right to

11   raise any defenses that you may have.  Do you understand?

12          THE DEFENDANT:  Yes.

13          THE COURT:  At a trial in your case, you would

14   have the right to testify on your own behalf, if you

15   chose to do so, but you could not be required to testify.

16   Under the Constitution of the United States, a defendant

17   in a criminal case cannot be forced to take the stand at

18   his own trial, and say anything that could be used

19   against him to show he is guilty of the crime or crimes

20   with which he is charged.  So if you decided not to

21   testify at your trial, the judge would tell the jury that

22   they could not hold that fact against you.  This is

23   called "your right against self-incrimination."  Do you

24   understand?

25          THE DEFENDANT:  Yes.

19

Proceedings

1        THE COURT:  If you go ahead with your guilty

2  plea, you will be admitting your guilt, and giving up

3  this right against self-incrimination.  Do you

4  understand?

5        THE DEFENDANT:  Yes.

6        THE COURT:  If you plead guilty, I'm going to

7  ask -- have to ask you questions about what you did in

8  order to assure myself and, in turn, the district judge,

9  that you are, in fact, guilty of the charges to which you

10 are pleading guilty.  You're going to have to answers

11 those questions truthfully and acknowledge your guilt.

12 And I'll remind you that you took an oath earlier to

13 answer my questions truthfully.  Do you understand?

14       THE DEFENDANT:  Yes.

15       THE COURT: Okay.  So it's not going to be

16 enough for you simply to say that you're guilty; you are

17 going to have to tell me what it is that you did, such,

18 that you are, in fact, guilty of the particular charges

19 to which you are pleading guilty.  Do you understand?

20       THE DEFENDANT:  Yes.

21       THE COURT:  If you plead guilty, and I

22 recommend that the district judge accept your plea, and

23 that's what Judge Korman does, you are giving up these

24 rights.  You are giving up your constitutional right to a

25 trial, and all of the other rights that I just discussed.

Proceedings

1   There won't be a trial of any kind in your case.  If the

2   district judge accepts your plea, he will simply enter a

3   judgement of guilty based on your guilty plea.  Do you

4   understand?

5           THE DEFENDANT:  Yes.

6           THE COURT:  All right.  Usually, after you are

7   sentenced, if you or your attorney thinks the judge has

8   not properly followed the law in sentencing you, you can

9   appeal your sentence to a higher court.  By pleading

10  guilty, though, you will not, except under very limited

11  circumstances, be able to challenge your judgement of

12  conviction by appeal or by collateral attack.

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  I'm going to go over

15  your plea agreement in detail in a few minutes, but I

16  want to draw your attention to paragraph 4, which is on

17  page 6, which includes the following provision.

18          "The defendant agrees not to file an appeal or

19  otherwise challenge by petition, pursuant to 28 United

20  States Code, Section 2255 or any other provision, the

21  conviction or sentence, in the event that the Court

22  imposes a term of imprisonment of 293 months."  Isn't

23  there -- I'm sorry, I'm going to ask counsel shouldn't it

24  really say "or less?"

25          MS. MERKL:  Yes. Yes.

21

Proceedings

1          THE COURT:  All right.  Sorry, I just need to

2    make an amendment to the agreement.

3          I just want to give counsel an opportunity to

4    confer.

5          All right, so you agree that's -- that's what

6    should say?

7          MR. VILLANUEVA:  Yes, I do, your Honor.

8          THE COURT:  All right.  So here's the original.

9          All right.  Ms. Lee, if you could make the

10   correction, initial it, or Ms. Merkl, whoever wants to do

11   it and then give it to defendant's counsel, ask you and

12   you client to initial and give you an opportunity to

13   explain it to your client.

14         MR. VILLANUEVA:  Thank you.

15         THE COURT:  All right.  I'm going to go over

16   the initials in a little bit.  But just to go back to the

17   point that I was making, usually can appeal your sentence

18   but your agreement with the government limits your right

19   to appeal directly or indirectly, if the judge gives you

20   sentence or a term of imprisonment of 293 months or less.

21   Do you understand that limitation?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Okay.  So are you willing to give

24   up your right to a trial and all of the other rights that

25   I've just gone discussed?

22

Proceedings

1           THE DEFENDANT:  Yes.

2           THE COURT:  Okay.  All right.

3           Now we're going to talk about the plea

4    agreement in some detail.

5           As I mentioned earlier, the plea agreement is

6    marked Government Exhibit 8.  Mr. Villanueva, were all

7    formal plea agreements -- I'm sorry, all formal offers by

8    the government conveyed to Mr. Rendon-Garcia?

9           MR. VILLANUEVA:  They were, your Honor.

10          THE COURT:  Okay.  So I have this document, the

11   plea agreement, Mr. Rendon-Garcia, was it translated for

12   you from English to Spanish?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  Before we go over the

15   document in particular, Mr. Villanueva, do you know who

16   translated it?

17          MR. VILLANUEVA:  I do.  I have a signed copy of

18   the copy.  It was translated by interpreter Jan Calloway.

19   (ph) Jan, last name is Calloway.

20          THE COURT:  So that's a copy -- who has the

21   original with Calloway's signature on it?

22          MR. VILLANUEVA:  The -- that's done at the

23   facility between my client, myself and the interpreter.

24          And that's just in a --

25          MS. LEE:  Your Honor --

23

Proceedings

1          MR. VILLANUEVA:  It's a copy.

2          MS. LEE:  Your Honor, generally what we've been

3  doing which is the practice of our office is just, we

4  print it on there, so it's noted who the person was --

5          THE COURT:  Okay.

6          MS. LEE: -- but it's not necessary for them to

7  have an original signature.

8          THE COURT:  Okay.

9          MR. VILLANUEVA:  But I do have an original

10  signature on a copy.

11          THE COURT:  Okay.  So why don't we incorporate

12  then reference a copy of that page in this agreement.

13          So if you want to provide it -- at the end of

14  this, I'm going to give the original document to the

15  government so you can get that page to the government

16  just because the copy I has -- I have had nothing written

17  on it.  And were you going to give me the page, okay.

18          All right.  So, Mr. Rendon-Garcia, I'm going to

19  read from the middle of the last page of the plea

20  agreement.

21          It says, "I have read the entire agreement and

22  discussed it with my attorney.  I understand all of its

23  terms and I'm entering into it knowingly and

24  voluntarily."

25          Is that a correct statement?

```
                                                        24
                        Proceedings
```

1                THE DEFENDANT:  Yes.

2                THE COURT:  I'm going to hold up the copy I

3     have and point at the signature right below what I just

4     read.  Is that your signature?

5                THE DEFENDANT:  Yes.

6                THE COURT:  And then below that, Mr.

7     Villanueva, is that your signature?

8                MR. VILLANUEVA:  Yes, it is, your Honor.

9                THE COURT:  And then you had given me the other

10    form, it's Jan Calloway, that's the translator, is that

11    correct?

12               MR. VILLANUEVA:  Yes, correct.

13               THE COURT:  All right.  And then for the

14    government, Ms. Lee, is the first signature appears, that

15    your signature?

16               MS. LEE:  It is, your Honor.

17               THE COURT:  And, Ms. Merkl, is that your

18    signature below?

19               MS. MERKL:  It is, Judge.

20               THE COURT:  Okay.  Thanks.

21               All right, Mr. Rendon-Reyes, Have you read the

22    entire plea agreement or was it read to you in Spanish?

23               THE DEFENDANT:  Yes.

24               THE COURT:  All right.  So I asked a compound

25    question.  Was it read to you in Spanish?

25

Proceedings

1          THE DEFENDANT:  Yes.

2          THE COURT:  And was it read to you by a Spanish

3    language interpreter?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Did you go over the plea agreement

6    which is Government Exhibit 8 with your attorney?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  In going over the

9    agreement with your attorney, did you have the assistance

10   of a Spanish language interpreter?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Do you understand all of the terms

13   of the plea agreement?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Does the written plea agreement,

16   Government Exhibit 8, accurately represent the entire

17   understanding or agreement that you have with the

18   government?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Has anyone made any promise or

21   assurance to you that is not included in the plea

22   agreement in order to persuade you to accept the plea

23   agreement?

24         THE DEFENDANT:  No.

25         THE COURT:  Has anyone threatened you in any

26

Proceedings

1   way to persuade you to accept the plea agreement?

2             THE DEFENDANT:  No.

3             THE COURT:  All right.

4             Mr. Villanueva, have you read and reviewed with

5   your client the entire written plea agreement?

6             MR. VILLANUEVA:  I have, yes.

7             THE COURT:  And did you do so with the

8   assistance of a Spanish language interpreter?

9             MR. VILLANUEVA:  I have.  I did, yes.

10            THE COURT:  And does Government Exhibit 8 of

11   the plea agreement reflect your understanding of the

12   entire agreement that your client entered into with the

13   government?

14            MR. VILLANUEVA:  Yes, it does.

15            THE COURT:  All right.

16            Mr. Rendon-Garcia, do you understand that if

17   you fail to fully comply with your agreement with the

18   government, the government will be released from its

19   obligation, but you will not be released from your guilty

20   plea?

21            THE DEFENDANT:  What was that?

22            THE COURT:  So what's proposed is that you're

23   going to plead guilty, and you're doing it subject to an

24   agreement that you have with the government.  If you

25   break the agreement or violate the agreement, the

27

Proceedings

1   government doesn't have to comply with the agreement.

2   They're released from their obligations.  But your guilty

3   plea will still stand?  Do you understand?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Okay.  All right. We're going to go

6   over the sentencing scheme applicable in your case.  This

7   is outlined in paragraph 1 of the plea agreement.

8           What's been proposed is that you're going to

9   plead guilty to Counts 1 of the superseding indictment

10  and to the lesser included offense of Count 11 of the

11  superseding indictment.

12          All right.  They charge you with violations of

13  two federal statutes, which are listed there.  18 United

14  States Code, Sections 1962(c) and 1591(a).  It's also

15  proposed that in your guilty plea, you are going to admit

16  as to racketeering acts, your participation in the sex

17  trafficking of a minor, who is referred to as Jane Doe

18  No. 3, and she's described in Racketeering Act 5(a) and

19  11 -- Count 11, as well as sex trafficking of Jane Doe

20  No. 8, who is described in Racketeering Act 10(a) and

21  Count 21 of the superseding indictment.  And again, just

22  to remind you, I'm holding it up.  That's the superseding

23  indictment, is the document that describes the charges

24  against you and your co-defendant.

25          So the possible sentencing consequences are as

28

Proceedings

1    follows: Under Count 1, the maximum term of imprisonment

2    is life in prison, the minimum term of imprisonment is

3    zero years.  Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  The maximum supervised release term

6    is five years, it would follow any term of imprisonment.

7    If a condition of release were violated, you may then be

8    sentenced for up to five years, and you would not receive

9    credit for pre-release imprisonment or time previously

10   served on post-release supervision.

11             If you are placed on supervised release, there

12   may be many restrictions on your liberty.   They might

13   include travel limitations, requirements that you report

14   to a probation officer and other limitations.

15             Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  The maximum fine that can be

18   imposed is the greater of $250,000 or twice the gross

19   gain or twice the gross loss.  Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Restitution is mandatory in the

22   full amount of each victim's losses as determined by the

23   court.  And you must be charged $100 special assessment.

24             Do you understand those provisions?

25             THE DEFENDANT:  Yes.

29

Proceedings

1          THE COURT:  Other penalties include the

2     following.

3          All right.  Let ask the government first.  Was

4     Mr. Rendon-Garcia extradited to the United States?

5          MS. MERKL:  Yes.

6          THE COURT:  All right.  So what I'm going to

7     describe now are immigration consequences that may apply

8     to you.

9          So paragraph 8 outlines those consequences.  To

10    the extent you are in the United States, and that's your

11    immigration status and you're not a citizen of the United

12    States, pleading guilty may have consequences with regard

13    to your immigration status in the United States.  A broad

14    range of crimes are what are called "removable offenses,"

15    including those to which it's proposed that you plead

16    guilty.

17         For acts because it's proposed you're going to

18    plead guilty, and if you do plead guilty to racketeering

19    involving sex trafficking and interstate prostitution,

20    your removal from the United States is presumptively

21    mandatory.   But you should know, removal and other

22    immigration consequences are decided in a separate

23    proceeding, not in this court.  So nobody here, not your

24    lawyer, not the government's lawyer, or the judge can

25    tell you what the definite effect of the conviction will

Proceedings

1    be on your immigration status.

2            What Paragraph 8 provides is that, nonetheless,

3    you still want to go ahead with your guilty plea,

4    regardless of any immigration consequences that may

5    result, even if the consequence is your automatic removal

6    from the United States.  Is that correct?

7            THE DEFENDANT:  Yes.

8            THE COURT:  And you understand that your

9    removal from the United States may occur after you served

10   a term of imprisonment in the United States?  Do you

11   understand that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Other possible statutory sentencing

14   consequences include, sex offender registration, pursuant

15   to a particular federal act, "Sex Offender Registration

16   Notification Act," which is 14 United States Code 16901

17   and the following sections.  And this is described in

18   paragraph 11 of your plea agreement.

19           Okay.  Have you reviewed paragraph 11?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Was it translated for you from

22   English to Spanish?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Did you review it with your lawyer?

25           THE DEFENDANT:  Yes.

Proceedings

1          THE COURT:  All right.  And are you in

2   agreement with paragraph 11?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  Let me ask you the same

5   questions about paragraph 8, which is the immigration

6   paragraph.

7          Was it translated for you from English to

8   Spanish?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And do you understand it?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Did you review it with your lawyer?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And are you in agreement with that

15   paragraph?

16          THE DEFENDANT:  Yes.

17          THE COURT:  All right.

18          Additional possible sentencing consequences

19   include, criminal forfeiture which are described in

20   paragraph 6 and 7 of the plea agreement.   Were

21   paragraphs 6 and 7 translated for you from English to

22   Spanish?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Okay.  Do you understand those --

25   that -- sorry, do you understand those paragraphs?

Proceedings

32

1                THE DEFENDANT:  Yes.

2                THE COURT:  And are you in agreement with those

3    paragraphs?

4                THE DEFENDANT:  Yes.

5                THE COURT:  And did you review them with your

6    lawyer?

7                THE DEFENDANT:  Yes.

8                THE COURT:  All right.  I'm going to hold up

9    paragraph 6 in the plea agreement and show it to you.

10   This is the paragraph that was updated with a change

11   regarding your financial statement.

12               All right.  Was this change, the one that's

13   written in pen on this agreement translated for you from

14   English to Spanish?

15               THE DEFENDANT:  Yes.

16               THE COURT:  And did you review it with your

17   lawyer?

18               THE DEFENDANT:  Yes.

19               THE COURT:  All right.  And -- okay, here, are

20   those your initials?   I'm pointing on the page.

21               THE DEFENDANT:  Yes.

22               THE COURT:  Okay.  And let's see, below that,

23   is that -- are those your initials?

24

25               MR. Villanueva:  My initials are there --

33

Proceedings

1        THE COURT:  Counsel?

2        MR. VILLANUEVA:  Yes.

3        THE COURT:  And then for the government, Ms.

4    Lee, are those your initials?

5        THE COURT: All right. Just to put it all

6    together to make sure I covered this.  Also there was a

7    handwritten change on the agreement in paragraph 4. Mr.

8    Rendon-Garcia, are these initials next to that change?

9        THE DEFENDANT:  Yes.

10        THE COURT:  And counsel?

11        MR. VILLANUEVA: Yes, your Honor.

12        THE COURT:  And then Ms. Lee, for the

13    government?

14        MS LEE:  Yes.

15        THE COURT:  Okay.  Returning to the possible

16    sentencing consequences.

17        It's also proposed that you're going to plead

18    guilty to a lesser included offense of Count 11.

19        Let me just ask the government, what's included

20    in here are the sentencing consequences for the lesser

21    included offense, is that right?

22        MS. MERKL:  Your Honor, the sentencing

23    consequences listed for Count 11 are the lesser included,

24    so it's a ten-year mandatory minimum.

25        THE COURT:  Instead of the 15, the other said?

Proceedings

1           MS. MERKL:  Correct.

2           THE COURT:  Okay.  All right.  I just wanted to

3    confirm something.

4           All right.  So, Mr. Rendon-Garcia, as I said,

5    what's proposed is you're going to plead guilty to the

6    lesser included offense of Count 11.  So the maximum term

7    of imprisonment in this term is life, the minium term of

8    imprisonment is ten years.   Do you understand that?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Do you understand on this count,

11   the judge has to sentence you to a term of at least ten

12   years?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  And did you review

15   these provisions with your attorney?

16          THE DEFENDANT:  Yes.

17          THE COURT:  All right.  And you understand this

18   mandatory minimum provision?

19          THE DEFENDANT:  Yes.

20          THE COURT:  All right.

21          Additional possible sentencing consequences of

22   Count 11 and the lesser included offense minimum

23   supervised release term of five years.  A maximum

24   supervised release term of life; it would follow any term

25   of imprisonment.

Proceedings

1        If a condition of release is violated, you

2   may be sentenced for up to life without credit for

3   pre-release imprisonment or time previously served on

4   post-released supervision.

5            THE DEFENDANT:  Yes.

6            THE COURT:  If you commit any criminal offense

7   under particular federal laws, which are Chapter 109(a),

8   110 or 117, or Title 18 United States Code, Section 1201

9   or 1591 for which imprisonment for a term longer than one

10  year can be imposed.   You shall be sentenced to not less

11  than five years and up to the maximum term of

12  imprisonment for the offense which is set forth above in

13  paragraph 1(a) and which is life.

14            As I've described earlier, if you are on

15  supervised release there may be many restrictions placed

16  on your liberty.  Do you understand this possible

17  sentencing consequence?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Okay.  You may also have the

20  maximum -- I'm sorry, let me say that again.  The maximum

21  fine is the greater of $250,000 or twice the gross gain

22  or twice the gross loss.

23            Restitution is mandatory in the full amount of

24  each victim's losses as determined by the court.  And

25  you'd have to be charged $100 special assessment.

Proceedings

1          Other penalties for this count include removal

2    from the United States as described in paragraph 8 and

3    then -- which we discussed earlier.  Do you understand

4    the removal provision?

5               THE DEFENDANT:  Yes.

6               THE COURT:  You still want to go ahead with the

7    plea for this count even though your automatic removal

8    from the United States is likely?

9               THE DEFENDANT:  Yes.

10              THE COURT:  All right.  And you understand that

11   removal may happen after you've served a sentence in the

12   United States?

13              THE DEFENDANT:  Yes.

14              THE COURT:  Additional penalties include

15   sex offender registration which is described in paragraph

16   11, and which we've discussed earlier.  Do you understand

17   this provision?

18              THE DEFENDANT:  Yes.

19              THE COURT:   And additionally, a penalty may

20   include criminal forfeiture which is described in

21   paragraphs 6 and 7.  Do you understand that provision?

22              THE DEFENDANT:  Yes.

23              THE COURT:  Okay.

24          Do you understand that the sentence for these

25   two counts to which it's proposed that you may -- your

Proceedings

1   going to plead guilty may run consecutively, or one after

2   the other.

3            THE DEFENDANT:  Yes.

4            THE COURT:  All right.  I'm just going to back

5   over the second count.  Do you understand that includes a

6   mandatory minimum so the judge has to sentence you to at

7   least 10 years in jail, or in prison?

8            THE DEFENDANT:  Yes.

9            THE COURT:  All right.  Do you understand that

10  parole has been abolished in the federal system?  So that

11  if you're sentenced to a prison term, you won't be

12  released on parole, and you'll be required to spend the

13  entire period of that term in prison?

14           THE DEFENDANT:  Yes.

15           THE COURT: All right.  Let me describe briefly

16  the sentencing process.

17           The sentencing judge in your case will be Judge

18  Korman as I mentioned, he does not have complete

19  discretion to impose a sentence outside of the statutory

20  minimum and maximum sentences set forth in the statute.

21  Do you understand?

22           THE DEFENDANT:  Yes.

23           THE COURT:  As a first step in the sentencing

24  process, the judge must first consider the advisory

25  sentencing guidelines that have been issued by the United

38

Proceedings

1    States Sentencing Commission.   The judge will review

2    them to help determine what's a reasonable sentence in a

3    criminal case.

4              As a second step, the judge will consider

5    whether there are any factors present that would allow

6    the judge to depart from those advisory sentencing

7    guidelines.  Either upwardly or downwardly.

8              THE COURT:  Additionally –

9              THE DEFENDANT: Yes.

10             THE COURT:  -- the judge must consider certain

11   factors that are outlined in a federal statute, that we

12   refer to as 18 United States Code Section 3553a.

13             The judge considers those factors against the

14   facts and circumstances of your case, and it may be that

15   the judge decides to impose what is called a "non-

16   guideline sentence."

17             The bottom line for you is until the date of

18   sentencing, when the judge has read the transcript of

19   today's proceeding, reviewed a pre-sentence report that

20   will be prepared about you and hears from you, your

21   lawyer, and the government you can't know with certainty

22   what the sentencing guidelines will be for your case or

23   whether there will be grounds to depart from them and

24   whether the judge will impose a "non-guideline sentence."

25   Do you understand that?

39

Proceedings

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  Even though I'm talking

3    about the guidelines and upward and downward departure,

4    it's important for you to understand that a guilty plea

5    to Count 11 includes the minimum term of imprisonment of

6    10 years?  Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  Despite the uncertainty

9    and that uncertainty may be because the lawyers are wrong

10   about something, because the facts change between now and

11   the time of sentencing or because they don't have certain

12   information, I'm going to ask the lawyers, first the

13   government and then your lawyer to let you know what

14   their estimate of the sentencing guidelines will be in

15   your case.  You should keep in mind this is their best

16   estimate and they could be wrong.

17          All right.  For the government, either Ms.

18   Merkl or Ms. Lee.

19          MS. MERKL:  Your Honor, based on our current

20   knowledge of the facts, the estimate as included in the

21   plea agreement is that the defendants overall adjusted

22   offense level is at a level 37, which carries a range of

23   imprisonment of 210 to 262 months, assuming that the

24   defendant falls within criminal history Category 1.  I

25   would note that that estimate is based on a two level

Proceedings

1   reduction, for a global disposition of this case.  And we

2   are at a point where we believe that that global

3   disposition is likely to be completed tomorrow but the

4   estimate is dependant upon that global disposition.

5            THE COURT:  All right.  And just so the

6   record's clear that's paragraph 10, has the global

7   disposition provision which says "April 20th" but because

8   of events as they transpired to date, the final plea if

9   it goes ahead is going to happen tomorrow.   Will the

10  government -- is it the government's position that that

11  provision of the agreement is satisfied, if that plea

12  happens tomorrow?

13           MS. MERKL:  Yes.

14           THE COURT:  Okay.

15           So, Mr. Rendon-Garcia, did you understand what

16  the government's lawyer said with regard to the estimate

17  for the sentencing guidelines in your case?

18           THE DEFENDANT:  Yes.

19           THE COURT:  All right.  And what the government

20  said is outlined in the second paragraph of the plea

21  agreement.

22           All right, and Mr. Villanueva, what's your

23  estimate with regard to the sentencing guidelines in your

24  client's case?

25           MR. VILLANUEVA:  I believe the government's

Proceedings

1    estimate is accurate, your Honor.

2              THE COURT:  Okay.

3              Mr. Rendon-Garcia, do you understand what your

4    attorney just said with regard to sentencing guidelines?

5              THE DEFENDANT:  Yes.

6              THE COURT:  All right.  Do you understand that

7    these estimates are not binding on the government,

8    probation or the court?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand that if their

11   estimates there are wrong that will be not -- that will

12   not be a basis for you to withdraw your plea of guilty?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you understand that your

15   ultimate sentence could turn out to be different from any

16   estimate your attorney or the government has given you?

17             THE DEFENDANT:  Yes.

18             THE COURT:  And it could turn out that because

19   of other statutory sentencing factors, the district judge

20   may impose a sentence higher than the one called for by

21   the advisory sentencing guidelines?   If that turned out

22   to be the case, you would not be permitted to withdraw

23   your guilty plea, simply because no one could tell you in

24   advance what your sentence will be?   Do you understand

25   that?

42

Proceedings

1        THE DEFENDANT:  Yes.

2        THE COURT:  All right.  So what's being

3  proposed is that you plead guilty to counts that are

4  felonies.  If your plea is accepted and you're adjudged

5  guilty of those felonies, to the extent you have certain

6  rights in the United States, the adjudication of guilt

7  with regard to those felonies may result in the

8  deprivation of certain civil rights.  Do you understand

9  that?

10        THE DEFENDANT:  Yes.

11        THE COURT:  All right.  I've gone over many of

12  the possible sentencing con -- I'm sorry.  I've gone over

13  with you many of the possible consequences to you if your

14  plea of guilty is accepted.  Do you understand all of

15  these consequences?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Have you reviewed them with your

18  attorney?

19        THE DEFENDANT:  Yes.

20        THE COURT:  Have you had a sufficient

21  opportunity to consult with your attorney about them?

22        THE DEFENDANT:  Yes.

23        THE COURT:  All right.  I'm going to go back to

24  the plea agreement.  Have you had the entire plea

25  agreement read to you in Spanish?

43

Proceedings

1          THE DEFENDANT:  Yes.

2          THE COURT:  And do you understand all of the

3    provisions of this plea agreement?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And did you have a sufficient

6    opportunity to review the plea agreement with your

7    attorney?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Okay.  All right.  I'm going to

10   switch to ask the lawyers some questions.

11          All right, so for the government, let me just

12   clarify one thing.

13          So I have the statutes and essential elements

14   that you provided.  On page three, the essential

15   elements of the lesser included offense for Count 11.

16   That part is what applies here?

17          MS. LEE:  That's correct.

18          THE COURT:  Okay.  All right.  And Mr.

19   Villanueva, you have a copy of the statutes and essential

20   elements.  Do you agree that the government's description

21   of those is correct?

22          MR. VILLANUEVA:  I do, your Honor.

23          THE COURT:  Okay.

24          MS. MERKL:  And just to be clear that's what

25   applies for count 11, --

44

Proceedings

1      THE COURT:  Right.

2      MS MERKL:  -- but the essential elements for

3  sex trafficking still apply in term of the racketeering

4  acts.

5      THE COURT:  Okay.  All right.

6      So with regard to the government's evidence

7  what would the government offer at trial in order to show

8  that the defendant is in fact, guilty, of the counts

9  against him?

10     MS. LEE:  The governement would through witness

11 testimony and documentary evidence, including but not

12 limited to the testimony of many of the witnesses set

13 forth in the superseding indictment, border crossing

14 records, money remitter records, and wire tap records,

15 established that in or about and between December 2004

16 and November 2015 in Queens, New York, and elsewhere, the

17 Rendon-Reyes trafficking organization was a criminal

18 organization and that it was operating in Queens,

19 Atlanta, Alabama, Mexico and other locations.

20         That members and associates of the Rendon-Reyes

21 trafficking organization engaged in various forms of

22 criminal activity, including, but not limited to, sex

23 trafficking of women and minor girls, prostitution, alien

24 smuggling, alien harboring and money laundering.  That

25 the enterprise trafficked women from Mexico into the

Proceedings

1   United States and throughout the country, for the

2   purposes of prostitution for their financial gain; and

3   that the defendant was a member of the Rendon-Reyes

4   trafficking organization, and has part of his membership,

5   he, among other things committed the acts alleged in

6   Racketeering Acts 5(a) and 10(a), which is the sex

7   trafficking of minor Jane Doe No. 3 and sex trafficking

8   of Jane Doe No. 8.  With respect to Racketeering Act 5(a)

9   in Count 11, the government would establish that in or

10  about and between March 2006 and October 2006, the

11  defendant, using force, fraud and coercion, caused Jane

12  Doe No. 3, who was a minor at the time, to be brought

13  from Mexico to the United States for the purposes of

14  prostitution.

15          And with respect to Racketeering Act 10(a), the

16  government would establish that in or about April 2009

17  and January 2014, the defendant knowing that force, fraud

18  and coercion had been used, caused Jane Doe No. 8 to be

19  brought from Mexico to the United States for the purposes

20  of prostitution.

21          THE COURT:  All right.  Mr. Villanueva, do you

22  agree the government would be able to prove the

23  defendant's guilt at trial based on the evidence just

24  described by the governement?

25          MR. VILLANUEVA:  I do, your Honor.

46

Proceedings

1          THE COURT:  Do you know of any reason why Mr.

2    Rendon-Rey -- Rendon-Garcia, should not plead guilty at

3    this time?

4          MR. VILLANUEVA:  I do not.

5          THE COURT:  Are you aware of any viable legal

6    defenses to the charges against him?

7          MR. VILLANUEVA:  No, your Honor.

8          THE COURT:  In your professional opinion, is

9    this plea in your client's best interest?

10          MR. VILLANUEVA:  It is.

11          THE COURT:  All right.  Mr. Rendon-Garcia, are

12    you ready to plead?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Would you like an opportunity to

15    speak with Mr. Villanueva before you do?

16          THE DEFENDANT:  No, it's okay.

17          THE COURT:  Okay.

18          With regard to Count 1 of the superseding

19    indictment how do you plead guilty or not guilty?

20          THE DEFENDANT:  Guilty.

21          THE COURT:  And with regard to the lesser

22    included offense of Count 11 of the superseding

23    indictment, how do you plead, guilty or not guilty?

24          THE DEFENDANT:  Guilty.

25          THE COURT:  All right.  As I mentioned earlier,

Proceedings

1  you're going to have to tell me what it is that you did,

2  such that you are, in fact, guilty of those two counts.

3          So in your own words, please tell me what you

4  did.

5          THE DEFENDANT:  Okay.

6          THE COURT:  All right.

7          THE DEFENDANT:  From December 2004 to November

8  2015, I was member of a family organization.  And -- and

9  um, with -- in which I helped to bring women to the

10 United States illegally, including to the Eastern

11 District of New York and other places.  I also helped to

12 transport those women from one state to another so that

13 the organization could earn money by prostituting them.

14 Including Jane No. 3, Jane No. 8, to prostitution with

15 false promises, even though they did not want to do it.

16          Jane No. 3 was under the eighteen years of age

17 at that time.  These women were -- did prostitution more

18 than once, and I benefitted financially.  This happened

19 in Queens and Georgia.

20          THE COURT:  When you mention the family

21 organization, is it the Rendon-Reyes family that's

22 mentioned and discussed in the indictment?

23          THE DEFENDANT:  Yes.

24          THE COURT:  All right.  Mr. Villanueva, do you

25 want your client to add anything else?

48

Proceedings

1          MR. VILLANUEVA:  No, your Honor.

2          THE COURT:  And for the government, is that a

3    satisfactory allocution?

4          MS. LEE:  Your Honor, I believe it is a

5    satisfactory allocution and I think that the defendant

6    said this but just because of the way the interpreter

7    translated it to make sure the record is clear, that he

8    stated that the Jane Doe No. 3 was under the age of

9    eighteen at the time that she was brought.

10         THE COURT:  Okay.  Is that correct?

11         MS. LEE:  Just the way it was actually

12   translated, I think the record might be a little unclear.

13         THE COURT:  Okay.  With regard to Jane Doe No.

14   3, was she under eighteen years old?

15         THE DEFENDANT:  Yes.

16         THE COURT:  All right. Is there any another

17   clarification needed?

18         MS LEE:  No, thank you.

19         THE COURT:  All right.  So, Mr. Rendon-Garcia,

20   are you pleading guilty to these two counts of the

21   superseding indictment voluntarily and of your own free

22   will?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Has anyone threatened or forced you

25   to plead guilty?

49

Proceedings

1              THE DEFENDANT:  No.

2              THE COURT:  Other than the promises that are

3    contained in the written plea agreement, which is

4    government Exhibit 8 that you entered into with the

5    government, has anyone made any other promises to you to

6    get you to plead guilty?

7              THE DEFENDANT:  No.

8              THE COURT:  Has anyone made any promise to you

9    as to what your final sentence will be?

10             THE DEFENDANT:  No.

11             THE COURT:  Are you pleading guilty of your own

12   free will to these two counts because, you are, in fact,

13   guilty?

14             THE DEFENDANT:  Yes.

15             THE COURT:  All right.

16             Based on what's been said here today by counsel

17   and by Mr. Rendon-Garcia, I believe that the defendant is

18   fully competent and capable of entering an informed plea,

19   that he's acting voluntarily, that he's aware of the

20   nature of the charges against him, that he understands

21   his rights, that he understands the consequences of his

22   plea and that there's a factual basis for the plea

23   supported by an independent basis in fact, as to each of

24   the essential elements of the two offenses which are

25   Count 1 and the lesser included offense of Count 11 of

50

Proceedings

1  the superseding indictment.

2          So I therefore resentfully recommend that Judge

3  Korman accept the guilty plea to Counts 1 and the lesser

4  included offense of Count 11.

5          All right.  As I mentioned earlier, there's

6  going to be a pre-sentence report prepared about you, Mr.

7  Rendon-Garcia, and I would like to know if your attorney

8  would like to participate in the interview.

9          MR. VILLANUEVA:  I would, your Honor, yes.

10          THE COURT:  All right.  We'll let probation

11  know.  I'm going to return to the government, the

12  original plea agreement, which is marked as Government

13  Exhibit 8, it includes that original signature page from

14  the translator, am I correct in assuming that the

15  defendant's going to remain in custody?

16          MR. VILLANUEVA:  That's correct.

17          THE COURT:  There's no bail application?

18          MR. VILLANUEVA:  No, your Honor.

19          THE COURT:  Are there any medical conditions

20  that need attention?

21          MR. VILLANUEVA:  One minute.

22          THE COURT:  Sure.

23          MR. VILLANUEVA:  Yes, your Honor.  My client

24  has complained to me that he's having some issues

25  regarding his blood pressure and other related issues and

Proceedings

1   he's asked to be treated at the facility and that has not

2   happened yet.

3           THE COURT:  Okay.  So let me ask a few

4   questions for the record.

5           Can you ask your client what those other

6   medical conditions are?

7           MR. VILLANUEVA:  Sure.  Thank you for the time,

8   your Honor.

9           My client indicates that he's having trouble

10  breathing.  His heart rate increases during that period

11  of time.

12          THE COURT:  Is it asthma or something

13  different?

14          MR. VILLANUEVA:  It's not described as asthma,

15  no, your Honor.

16          THE COURT:  All right.  Let me ask your client

17  some questions.

18          MR. VILLANUEVA:  Sure.

19          THE COURT:  So what we've heard is you have

20  some concerns about high blood pressure, a fast heart

21  rate and associated breathing difficulties, Is that

22  right?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And is it right those are currently

25  not being treat4ed at the detention facility?

52

Proceedings

1           THE DEFENDANT:  Well, when I arrived yesterday

2    they give me a check-up, but right at the moment I'm not

3    receiving any treatment.

4           THE COURT:  Okay.  Is there anything about

5    those medical conditions that interfered with your

6    ability to understand what happened here today?

7           THE DEFENDANT:  Can you explain that to me

8    again please?

9           THE COURT:  Okay.  So you described three

10   medical conditions, high blood pressure, rapid heart rate

11   and with the rapid heart rate some difficulty breathing.

12   And you said you're not currently receiving treatment.

13          I want to know if there's anything about that

14   that interfered with your ability to understand what

15   happened here in court today.

16          THE DEFENDANT:  No.

17          THE COURT:  All right.  Is there anything about

18   those three conditions that interfered with your ability

19   to prepare for today's proceeding with your attorney?

20          THE DEFENDANT:  No.

21          THE COURT:  Okay.  All right.

22          Counsel, is there anything else about that that

23   you need -- that you think needs to be on the record?

24          MR. VILLANUEVA:  No, your Honor.  Thank you.

25          THE COURT:  The government?

53

Proceedings

1        MS MERKL:  Your Honor, I would just

2   respectfully request that you inquire with Mr. Villanueva

3   whether or not in his experience with this defendant, he

4   has experienced any difficulties communicating with his

5   client as a result of these medical conditions or whether

6   the defendant has exhibited any lack of understanding in

7   his meetings?

8        THE COURT:  All right.  Mr. Villanueva, you

9   just heard the question --

10        MR. VILLANUEVA:  Yes, your Honor.

11        THE COURT:  -- proposed by Ms. Merkl --

12        MR. VILLANUEVA:  I have, I have no trouble

13   communicating with my client as a result of any medical

14   issue.  He had complained to me recently of this issue

15   and I accepted the court's invitation to hopefully get

16   him more prompt medical attention and the MDC.

17        THE COURT:  Okay.  All right.

18        So high blood pressure, rapid heart rate and

19   associated difficulty breathing.  So we'll put a medical

20   memorandum in.  Is there any active condition right now

21   that he needs attention for today?

22        Are you feeling okay?

23        MR. VILLANUEVA:  Yes, he's feeling – he's okay

24   today.  Thank you, your Honor.

25        THE COURT:  All right.  Let me just ask you

54

Proceedings

1  directly.

2          Mr. Rendon-Reyes, are you feeling fine today?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  So, we'll put the

5  medical memo in about that.

6          Anything other issue we should go over today

7  with regard to Mr. Rendon-Garica?

8          MR. VILLANUEVA:  No, not from us, your Honor.

9  Thank you.

10          MS LEE:  Not for the government, your Honor.

11          THE COURT:  All right.  So the last of these

12  series of pleas is scheduled for tomorrow at 1:00 p.m.

13          All right?

14          MS MERKL:  Thank you, Judge.

15          THE COURT:  Thanks.  Take Care.  Have a good

16  night.

17          MR. VILLANUEVA:  Thank you.

18          MS MERKL:  Have a good night.

19          MR. VILLANUEVA:  Have a good night.

20          (Matter concluded as of this date)

21                    -o0o-

22

23

24

25

55

# C E R T I F I C A T E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this 21st day of May, 2017.



Rosalie Lombardi
Transcription Plus II